UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-6264 PSG (MRWx) | Date | March 7, 2018 |
|---|---|---|---|
| Title | JST Distribution, LLC v. CNV.com, Inc. et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**   Order GRANTING IN PART and DENYING IN PART Defendant's motion to dismiss

Before the Court is a motion to dismiss filed by Defendant CNV.com, Inc. ("Defendant"). *See* Dkt. # 55 ("*Mot.*"). Plaintiff JST Distribution, LLC ("Plaintiff") opposes the motion, *see* Dkt. # 78 ("*Opp.*"), and Defendant replied, *see* Dkt. # 92 ("*Reply*"). Defendant LoveWorks, LLC joins the motion. *See* Dkt. # 105. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving papers, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

I.   Background

Plaintiff is a Texas limited liability company that "manufactures and offers for sale the product, 'Powerful Desire,' a male sexual performance enhancement pill," and "owns and operates the online retail website powerfuldesire.com, which advertises and offers for sale Powerful Desire." *See First Amended Complaint*, Dkt. # 16 ("*FAC*"), ¶¶ 17, 42. Powerful Desire, it explains, is an "all-natural pill, which primarily contains the ingredients Arginine alpha AKG, Di-Arginine Malate, Agmatine, Vanadyl Sulfate, L Taurine, Glycerol Monostearate and Methylsulfonylmethane." *Id.* ¶ 42.

Plaintiff broadly alleges that Defendant "is at the center of a massive hub-and-spoke conspiracy to sell tainted 'male enhancement' pills containing undisclosed pharmaceuticals to the general public." *Id.* ¶¶ 1, 43, 46. Specifically, it claims that Defendant is the owner of the website "checkout.cnv.com," which "facilitates the advertising and sale" of a variety of sexual enhancement products ("the Enhancement Products") with evocative names like Black Panther, ExtenZone, Rhino Big Horn 3000, and RockHard Weekend. *Id.* ¶¶ 1–2, 47.[1] In concert with the

---

[1] Although Plaintiff lists a host of male enhancement products in its complaint, *see FAC* ¶¶ 1, 47, allegations pertaining to the Enhancement Products center on only three of these: Black Panther, Rhino 9 Premium 3500, and Rhino 5 1500. *See id.* ¶¶ 49–70.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-6264 PSG (MRWx) | Date | March 7, 2018 |
|---|---|---|---|
| Title | JST Distribution, LLC v. CNV.com, Inc. et al. | | |

other defendants named in this action ("the Conspiracy Defendants"), Defendant allegedly operates a network of other websites and physical storefronts that sell "illegal and dangerous products." *Id.* ¶¶ 1, 4, 48. In contrast to the allegedly "all-natural" Powerful Desire, the Enhancement Products, though advertised by Defendant as containing "no chemicals," having an "all natural herbal formula," and requiring "no prescription," actually contained "prescription drug ingredients, such as sildenafil."[2] *Id.* ¶¶ 8–9. Plaintiff alleges that Defendant and the Conspiracy Defendants "fail to disclose any of the adverse health consequences of taking sildenafil or other hidden drug ingredients," and that selling products containing these ingredients is "unlawful and seriously endangers consumers." *Id.* ¶ 9. Although Defendant and the Conspiracy Defendants "knew, or should have known, that their Enhancement Products contain hidden drug ingredients and actually require a prescription from a medical doctor," they have nevertheless maintained a campaign of false and deceptive trade practices for which they have allegedly been "unjustly enriched [] at the expense of" Plaintiff. *Id.* ¶¶ 11–12.

Defendant's position at the center of this scheme is premised on its role as the alleged facilitator of the sale of the Enhancement Products. *Id.* ¶ 43. Plaintiff claims that "the Privacy Policy and Terms and Conditions on each of the Conspiracy Defendants' websites" indicate that Defendant "runs" the website, selects the products and services that may be purchased, and "makes a conscientious effort to describe and display its products and services accurately." *Id.* ¶ 44. Accordingly, Plaintiff concludes that Defendant "not only 'facilitates' the shopping on each one of the 22 Conspiracy Defendants' sites, but also has the final authority over their content." *Id.* ¶ 45.

Plaintiff filed its original complaint in this Court on August 24, 2017, *see* Dkt. # 1, and filed a first amended complaint ("FAC") on November 17, 2017. In its FAC, Plaintiff alleges two claims for relief:

> First Claim for Relief: False advertising in violation of Section 43(a)(1)(B) of the Lanham Act. *FAC* ¶¶ 73–83.

> Second Claim for Relief: Violation of the Civil Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.* ¶¶ 84–92.

Defendant now moves to dismiss the claims against it, arguing that neither of Plaintiff's causes of action states plausible claims upon which relief can be granted. *See generally Mot.*

II.   Legal Standard

---

[2] Sildenafil is better known by the name "Viagra." *Opp.* 5:12–13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-6264 PSG (MRWx) | Date | March 7, 2018 |
|---|---|---|---|
| Title | JST Distribution, LLC v. CNV.com, Inc. et al. | | |

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).[3]

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud. Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rather, a plaintiff must identify each defendant's role in the alleged scheme. *See id.* at 765.

III.     Discussion

Each of Plaintiff's causes of action will be considered in turn.

---

[3] In its opposition, Plaintiff proposes a 12(b)(6) standard of review derived from a series of pre-*Twombly* Supreme Court and Ninth Circuit decisions. *See Opp.* 6:21–7:2. This includes citation to a 1988 Ninth Circuit decision that relied on *Conley v. Gibson*, 355 U.S. 41 (1957), the latter of which held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46. As first-year civil procedure students now learn, *Conley* and its "no set of facts" dictate were abrogated by *Twombly* and its progeny. *See Twombly*, 550 U.S. at 560–63; *Iqbal*, 556 U.S. at 670 (noting that "*Twombly* retired the *Conley* no-set-of-facts test"). Plaintiff is therefore admonished to review a revised civil procedure hornbook to calibrate future filings to the appropriate standard of review.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-6264 PSG (MRWx) | Date | March 7, 2018 |
|---|---|---|---|
| Title | JST Distribution, LLC v. CNV.com, Inc. et al. | | |

A. <u>Lanham Act Claim</u>

There are five elements to a false advertising claim under Section 43(a) of the Lanham Act: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *See Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012); 15 U.S.C. § 1125(a)(1)(B).

    *i.    Attribution to Defendant*

To begin, Defendant challenges whether the alleged false advertising can be properly attributed to it by noting what it considers to be a "glaring" defect in the FAC: that Plaintiff "*does not allege that* [Defendant] *created or authored any of the false advertising*." *Mot.* 6:15–17 (emphasis in original). Defendant asserts that it did *not* author or create any of the alleged false advertising, and to support this contention, cites language from its "Terms and Conditions Page":

> The Site MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AS TO . . . THE ACCURACY OR COMPLETENESS OF CONTENT, MATERIALS, [or] PRODUCTS . . . INCUDED ON OR OTHERWISE MADE AVAILABLE TO YOU THROUGH THE SITE . . . .
>
> THE SITE DOES NOT REPRESENT OR WARRANT THAT THE NUTRITION, INGREDIENT, ALLERGAN AND OTHER PRODUCT INFORMATION ON OUR SITE IS ACCURATE OR COMPLETE SINCE THIS INFORMATION COMES FROM THE PRODUCT MANUFACTURER OR SUPPLIER AND ON OCCASION MANUFACTURERS MAY IMPROVE THEIR PRODUCTS AND UPDATE THEIR LABELS.  WE RECOMMEND THAT YOU DO NOT RELY SOLELY ON THE INFORMATION PRESENTED ON OUR SITE AND THAT YOU CONSULT THE PRODUCT'S LABEL OR CONTACT THE MANUFACTURER DIRECTLY IF YOU HAVE A SPECIFIC DIETARY CONCERN OR QUESTION ABOUT A PRODUCT.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-6264 PSG (MRWx) | Date | March 7, 2018 |
|---|---|---|---|
| Title | JST Distribution, LLC v. CNV.com, Inc. et al. | | |

*Mot.* 7:12–8:2; *see also Declaration of Don A. Hernandez*, Dkt. # 55-1, ¶ 5, Ex. 3 at 5.[4] Defendant concludes that "[t]he reasonable and probable inference from this language is that it was the manufacturer or supplier . . . that provided the product descriptions," not Defendant. *Mot.* 8:4–9.

While the Court agrees with this analysis, it disagrees with Defendant's conclusion that it is therefore shielded from liability. In support of its proposition that "Plaintiff cannot hold someone liable for false advertising who did not come up with the allegedly false statements," *Reply* 4:5–7, Defendant cites *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, No. C08-1372 RSM, 2010 WL 2079694 (W.D. Wash. May 20, 2010), in which the court declined to hold a defendant, Tien Hsin, liable for false advertising because "[u]ncontroverted evidence establishe[d] that no Tien Hsin employees contributed to [the false] advertisements, commissioned the advertisements, reviewed the advertisements, or participated in their creation *or dissemination* in any way." *Id.* at *3 (emphasis added). Here, Defendant's Terms and Conditions do indeed suggest that it did not author the allegedly false statements, but this is not what is alleged in the FAC. Instead, Plaintiff claims that Defendant *disseminated* the false statements. *See FAC* ¶ 81 ("Defendants have introduced their false and misleading statements into interstate commerce via marketing and advertising on various websites and shipment of their products containing false and misleading advertising into interstate commerce."). Accordingly, the fact that Defendant did not actually author or create the allegedly false advertising does not shield it from liability given that the basis of Plaintiff's claim is that Defendant used, promoted, and disseminated the false advertising through its website.

        ii.       *Mere Puffery*

Defendant also suggests that the allegedly false advertising constitutes at worst mere puffery and so is not actionable under the Lanham Act. *See Mot.* 8:16–10:4.

"'Puffing' is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable under § 43(a)." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (quoting 3 J. Thomas McCarthy, *McCarthy on Trademarks*

---

[4] Defendant asserts, and Plaintiff does not dispute, that the text of the Terms and Conditions can be considered on this motion to dismiss because it is incorporated by reference into the FAC. *See FAC* ¶ 44; *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) (noting that a court may utilize "attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice"); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-6264 PSG (MRWx) | Date | March 7, 2018 |
|---|---|---|---|
| Title | JST Distribution, LLC v. CNV.com, Inc. et al. | | |

*and Unfair Competition* § 27.04 (3d ed. 1994)). Courts should distinguish between "claims that are vague or highly subjective," which "often amount to nonactionable puffery," and "misdescriptions of specific or absolute characteristics of a product," which are actionable. *Southland Sod Farms*, 108 F.3d at 1145.

     Here, Defendant premises its puffery argument on the allegedly false phrases "all natural" and "no chemicals," which are highlighted by Plaintiff in the FAC. *FAC* ¶¶ 8, 48, 67, 75, 86. These sorts of vague, ill-defined phrases have indeed been considered nonactionable puffery in prior decisions. *See, e.g.*, *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) ("Plaintiff cannot state a claim . . . regarding Defendants' allegedly false, misleading, and deceptive 'All Natural' labeling because she fails to offer an objective or plausible definition of the phrase 'All Natural,' and the use of the term 'All Natural' is not deceptive in context."). However, while "all natural" and "no chemicals" might be vague or highly subjective concepts, Plaintiff points out that it also cites specific factual representations made by Defendant: specifically, that the Enhancement Products contain "no harmful synthetic chemicals" and that "no prescription [is] necessary." *FAC* ¶¶ 3, 8, 48–49. As Plaintiff notes, "the determination of whether 'NO PRECRIPTION necessary' and 'NO HARMFUL synthetic chemicals' are true is very much subject to an objective standard, specifically the FDA-approved usage and 21 U.S.C. § 353(b)(1)(A) & (B)." *Opp.* 12:16–18. The Court agrees. Although some of the allegedly false phrases contained in the FAC might be little more than puffery, Plaintiff has also identified advertising language that constitutes "specific, detailed factual assertions" that are actionable under the Lanham Act. *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *11 (N.D. Cal. June 5, 2009). Accordingly, the Court concludes that Plaintiff's false advertising claim should not be dismissed on the basis that the challenged language is mere puffery.

                iii.     *Tendency to Deceive and Materiality*

     Next, Defendant argues that Plaintiff has failed to plausibly allege that the allegedly false advertisements deceived or were likely to deceive reasonable consumers. *See Mot.* 10:5–11:7. In doing so, it also challenges the materiality of the advertising at issue.

     The Court concludes that Plaintiff has plausibly alleged a tendency to deceive. It has cited specific, objective factual assertions allegedly made by Defendant—"no prescription necessary," "no harmful synthetic chemicals," and so on—and then alleged that these assertions are demonstrably untrue. Had Plaintiff relied solely on an ambiguous, ill-defined phrase like "all natural," a more exacting analysis would be needed, and Plaintiff would be required to "allege[] a plausible interpretation of what 'All–Natural' would mean to a reasonable consumer of [the Enhancement Products] and indicate[] exactly which ingredients in various iterations of [the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-6264 PSG (MRWx) | Date | March 7, 2018 |
|---|---|---|---|
| Title | JST Distribution, LLC v. CNV.com, Inc. et al. | | |

Enhancement Products] do not meet this definition." *Dorsey v. Rockhard Labs., LLC*, No. CV 13-07557 DDP (RZx), 2014 WL 4678969, at *7 (C.D. Cal. Sept. 19, 2014). But because Plaintiff also cites to actionable statements of fact that are allegedly false and not subject to multiple interpretations, the Court is satisfied that such language would have a tendency to deceive a substantial segment of its audience.

> As for materiality, Defendant offers the following musings:
>
> Is it plausible that a substantial number of consumers over the brief five months of Plaintiff's existence visited its website and opted instead to purchase one of the products offered for sale by one of [Defendant's] co-defendants solely as a result of an "all natural" description? Especially if, as likely, the same description is likely to appear on Plaintiff's website? Wouldn't it be more plausible that a consumer was guided by another factor such as price or alleged effectiveness of the product? What about location of the seller? Its reputation? The consumer's prior purchase history with the seller? Even that a potential purchaser [is] unlikely to [] know anything about Plaintiff since it is so new?

*Mot.* 10:22–11:2. These are relevant inquiries, and were the Court ruling on a motion for summary judgment, it would be obliged to consider them to determine materiality. On a motion to dismiss, however, the Court must accept Plaintiff's allegations as true and in the light most favorable to it. Plaintiff alleges that Defendant's "deception is material because it is likely to influence a consumer's purchasing decisions, especially if the consumer is concerned about the consequences of taking certain prescription drugs without the supervision of a medical doctor." *FAC* ¶ 80. It is plausible that representations regarding a product's safety and the need for a prescription would be material to a consumer's decision to purchase the product. Accordingly, the Court is unwilling to conclude at this time that the allegedly false advertisements were *not* material, and so the Lanham Act claim should not be dismissed on this basis.

### iv.   Plaintiff's Injury

Finally, Defendant asserts that Plaintiff has failed to allege that it suffered an injury. *See Mot.* 11:8–12:9. It notes that "Plaintiff does not provide any deeper level of detail to support its assertions which would explain, *e.g.*, how Plaintiff can be sure that a consumer's decision to purchase any of the Enhancement products was affected by the alleged misrepresentations, or how *its* sales in particular were affected." *Id.* 11:28–12:3 (emphasis in original). However, proof of injury is not required at this time, as the Ninth Circuit has "generally presumed commercial injury when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers." *TrafficSchool.com, Inc. v. Edriver*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-6264 PSG (MRWx) | Date | March 7, 2018 |
|---|---|---|---|
| Title | JST Distribution, LLC v. CNV.com, Inc. et al. | | |

*Inc.*, 653 F.3d 820, 826 (9th Cir. 2011); *see also id.* at 827 (quoting *Kournikova v. General Media Commc'ns Inc.*, 278 F. Supp. 2d 1111, 1117 (C.D. Cal. 2003)) ("There are good reasons to presume that a competitor bringing a false advertising claim has suffered a commercial injury. Competitors 'vie for the same dollars from the same consumer group,' and a misleading ad can upset their relative competitive positions. . . . Requiring proof that defendant's ads caused plaintiff to lose sales as a prerequisite to bringing suit would frustrate its ability to act as the fabled vicarious avenger of the consuming public."). Here, Plaintiff and Defendant indisputably operate in the same industry and are competitors. Accordingly, the Court can presume the existence of commercial injury for purposes of the Lanham Act.[5]

       *v.*     *Summation*

The Court concludes that Plaintiff has alleged a plausible claim for false advertising under section 43(a) of the Lanham Act. Therefore, the Court **DENIES** Defendant's motion to dismiss Plaintiff's first claim for relief.

    B.    <u>RICO Claim</u>

The elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to the plaintiff's business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1962(c), 1964(c)). "In order to avoid dismissal for failure to state a claim, a [RICO] plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise." *Comwest, Inc. v. American Operator Servs., Inc.*, 765 F. Supp. 1467, 1475 (C.D. Cal. 1991) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)) (alteration in original). Civil RICO claims based on fraud must be pleaded with particularity pursuant to Rule 9(b). *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004).

Here, Defendant challenges the satisfaction of three RICO claim elements: predicate acts, conduct, and injury.

       *i.*     *Predicate Acts*

---

[5] While not dispositive of this issue, Plaintiff also argues that its prayer for injunctive relief obviates its need to establish monetary damages. *See Opp.* 15:18–25; *Southland Sod Farms*, 108 F.3d at 1145 ("[A] competitor need not prove injury when suing to enjoin conduct that violates section 43(a)."). However, Defendant notes that Plaintiff does *not* allege that Defendant continues to sell the Enhancement Products. *See Reply* 6:14–22. Although this fact is not alone grounds to dismiss Plaintiff's Lanham Act claim, the Court notes that the absence of an allegation of continued sales suggests that Plaintiff's request for injunctive relief might be moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-6264 PSG (MRWx) | Date | March 7, 2018 |
|---|---|---|---|
| Title | JST Distribution, LLC v. CNV.com, Inc. et al. | | |

The predicate acts required for a civil RICO claim are "at least two acts of racketeering activity" as defined by the statute. 18 U.S.C. § 1961(5). The statute recognizes mail fraud under § 1341 and wire fraud under § 1343 as qualifying acts of racketeering activity. *See* 18 U.S.C. § 1961(1). Plaintiff's FAC includes allegations of mail fraud, *see FAC* ¶ 89, and wire fraud, *see id.* ¶ 90.

To begin, the Court agrees with Defendant that the FAC does not adequately plead intent to defraud. Both mail fraud and wire fraud require a "scheme . . . to defraud." 18 U.S.C. §§ 1341, 1343. Here, Plaintiff offers only conclusory allegations of a "scheme to defraud and mislead consumers of their products." *FAC* ¶¶ 89–90. However, the FAC does not contain *specific* allegations that Defendant and the Conspiracy Defendants intended to deceive their customers. Indeed, elsewhere in the complaint, Plaintiff alleges that Defendant "makes a conscientious effort to describe and display its products and services accurately." *Id.* ¶¶ 2, 44. Although Plaintiff claims that Defendant "knew, or should have known, that [the] Enhancement Products contain hidden drug ingredients and actually require a prescription from a medical doctor," *id.* ¶¶ 11, 78, these are again merely conclusory statements. Nowhere does Plaintiff allege with specificity that Defendant knew that the Enhancement Products contained sildenafil, or that it knew that the Products required a doctor's prescription, or that it intended to mislead consumers as to these and other features. The existence of false advertisements does necessarily indicate an intent to defraud consumers, especially given that Defendant did not actually author the alleged misrepresentations and merely placed the manufacturers' language on its website. Plaintiff's FAC offers no allegations from which fraudulent intent can be derived, other than conclusory allegations that are insufficient even under relaxed pleading standards.

Furthermore, Plaintiff's allegations of mail and wire fraud do not satisfy the particularity standard of Rule 9(b), which requires "the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted). Not a *single* specific instance of mail or wire fraud is included in the FAC; specific allegations as to the time, place, and manner of this alleged misconduct are absent. Because Plaintiff offers only scant descriptions of an alleged "scheme" of fraudulent conduct, the FAC falls short of the heightened pleading standard that is applied to a civil RICO claim.

Because Plaintiff has not adequately pleaded Defendant's fraudulent intent or the particulars of the alleged mail and wire fraud, the predicate acts requirement of a civil RICO cause of action is not satisfied, and the claim cannot be maintained. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) ("The allegations of predicate acts in the complaint concerning those elements of RICO are entirely general; no specifics of time, place, or nature of the alleged communications are pleaded. This is a fatal defect under Fed.R.Civ.P. 9(b),

Case 2:17-cv-06264-PSG-MRW   Document 108   Filed 03/07/18   Page 10 of 12   Page ID #:696

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-6264 PSG (MRWx) | Date | March 7, 2018 |
|---|---|---|---|
| Title | JST Distribution, LLC v. CNV.com, Inc. et al. | | |

which requires that circumstances constituting fraud be stated with particularity."). Therefore, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's second claim for relief.

        *ii.*    Conduct

Because the Court grants leave to amend, *see* Part IV below, it will also consider Defendant's additional grounds for dismissal of the civil RICO claim.

Defendant argues that Plaintiff has not alleged the roles of the various defendants in sufficient detail. *See Mot.* 14:23–15:23. The Court agrees. Plaintiff broadly sketches the outline of an alleged conspiracy, placing Defendant at its center, *see FAC* ¶¶ 43–48, but it lacks specific details such as when the conspiracy began, when the alleged misrepresentations were made, and how the Conspiracy Defendants interacted with Defendant. The FAC suggests that the Conspiracy Defendants "contract with [Defendant] to share in profits from the sale of the illegal and dangerous products," but the relationships between the various defendants are otherwise ill-defined, and there is an absence of *specific* misconduct that is assigned to *specific* defendants. The FAC enumerates which of the Enhancement Products that the Conspiracy Defendants allegedly sold, *see id.* ¶¶ 49–70, but these individualized allegations are not sufficiently tied to a clearly defined conspiracy with Defendant as its hub. Given that "[c]ivil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device," *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991), and that "the allegedly offending advertisements are not [for Defendant's] products," the Court agrees that "it is even more important that Plaintiff inform [Defendant] with specifics concerning what it did, and when." *Reply* 7:4–7.

Plaintiffs suggests that "[c]ourts in this Circuit have refrained from a strict application of the heightened 'who, what, when, where, and how' pleading standard of Rule 9(b) in cases where the alleged fraud involves webpage marketing." *Opp.* 17:3–6. However, the authority on which it relies for this proposition is not persuasive. In *Ehret v. Uber Technologies, Inc.*, 68 F. Supp. 3d 1121 (N.D. Cal. 2014), a case that involved webpage marketing, the court did indeed relax the normally heightened particularity standard. *See id.* at 1129. But in doing so, it did *not* make a broad assertion about webpage-based fraud claims, as Plaintiff does, but instead cited to *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009), in which the California Supreme Court wrote that "where . . . a plaintiff alleges exposure to a *long-term advertising campaign*, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." *Id.* at 328 (emphasis added). There is no indication in the FAC that this action, like *Ehret* or *In re Tobacco*, centers on a long, drawn-out advertising campaign. Accordingly, the Court is unwilling to follow *Ehret*'s lead and relax the applicable pleading standard, especially given that, unlike *Ehret*, this case involves a civil RICO claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-6264 PSG (MRWx) | Date | March 7, 2018 |
|---|---|---|---|
| Title | JST Distribution, LLC v. CNV.com, Inc. et al. | | |

      *iii.*    Injury

Lastly, Defendant contends that Plaintiff has failed to plausibly allege injury as a result of the purported RICO violations. *See Mot.* 15:24–16:19.

"The only requirement for RICO standing is that one be a 'person injured in his business or property by reason of a violation of section 1962.'" *Diaz v. Gates*, 420 F.3d 897, 901 (9th Cir. 2005) (quoting 18 U.S.C. § 1964(c)); *see also Holmes v. Securities Inv'r Prot. Corp.*, 503 U.S. 258, 265–68 (1992) (indicating that "by reason of" incorporates a proximate cause standard). In contrast to Plaintiff's Lanham Act claim, in which injury could be inferred because the parties are competitors, here Plaintiff needs to demonstrate that Defendant's RICO violation was a "substantial factor" in the sequence that caused its injury. *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 773 (9th Cir. 2002). Accordingly, the various unanswered questions posed by Defendant in Part III.A.iii must be considered here. Plaintiff only alleges that it "has been injured in its business or property by reason of Defendants' violation of section 1962 by, *inter alia*, the diversion of sales to Defendants, which sell products directly in competition with Plaintiff's products, including the Enhancement Products at issue here." *FAC* ¶ 92. It does *not* address whether its sales of Powerful Desire necessarily suffered as a result of Defendant's false advertising as opposed to some other factor, such as price, productive effectiveness, familiarity with the seller,[6] or purchasing habits of customers. Furthermore, as Defendant notes, Plaintiff "fails to plausibly allege how, in the mere five months of its existence, it has suffered 'extensive and irreparable harm, including but not limited to, loss of revenue, disparagement, and loss of goodwill.'" *Mot.* 16:13–16 (quoting *FAC* ¶¶ 6, 12).

In short, because Plaintiff's FAC does not plausibly allege that it was Defendant's alleged RICO conduct and *not* one or more of various other factors that resulted in diverted sales, it has not adequately pleaded an injury under a civil RICO claim.

IV.    <u>Leave to Amend</u>

Plaintiff requests leave to amend. *See Opp.* 20:3–22.

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The Court considers whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355

---

[6] Defendant notes that Plaintiff "was formed on March 22, 2017," a mere five months before this action was filed. *Reply* 8:26–28.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-6264 PSG (MRWx) | Date | March 7, 2018 |
|---|---|---|---|
| Title | JST Distribution, LLC v. CNV.com, Inc. et al. | | |

(9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Here, the Court concludes that Plaintiff's civil RICO claim fails because of various instances of insufficient pleading. Although Plaintiff falls well short of the heightened pleading standard applied to this cause of action—one designed to "flush out frivolous RICO allegations at an early stage of the litigation" due to the "almost inevitable stigmatizing effect on those named as defendants," *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)—it is possible that these inadequacies might be cured through amendment. Defendant argues that leave to amend should *not* be granted because its counsel previously "identified the deficiencies of Plaintiff's . . . RICO claims to Plaintiff's counsel." *Mot.* 2:21–26. However, because this is the Court's first consideration of Plaintiff's allegations, it nevertheless **GRANTS** leave to amend to give Plaintiff the opportunity to enhance its allegations.

V. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's second claim for civil RICO and **DENIES** Defendant's motion to dismiss Plaintiff's first claim for false advertising under the Lanham Act.

Because the Court **GRANTS** leave to amend, Plaintiff must file a second amended complaint by **April 6, 2018**. Failure to file by that date will result in dismissal of Plaintiff's second claim for relief with prejudice.

Although the Court has granted leave to amend, Plaintiff and its counsel should be mindful of Rule 11 standards in re-pleading its civil RICO claim, given the various insufficiencies identified in this order. "Rule 11 is designed to deter attorneys and unrepresented parties from violating their certification that any pleading, motion or other paper presented to the court is supported by an objectively reasonable legal and factual basis; no showing of bad faith or subjective intent is required." *Truesdell v. Southern Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 173–74 (C.D. Cal. 2002). In the event that the Court finds that Plaintiff's civil RICO claim fails to comply with Rule 11, it may impose sanctions and invite Defendant to move to recover attorneys' fees and costs associated with the filings of the motions to dismiss. *See* Fed R. Civ. P. 11(c).

**IT IS SO ORDERED.**